MICHAEL DRADY, Plaintiff, v. THE DISTRICT COURT OF. POLK COUNTY, and JOSIAH GIVEN, Judge thereof, Defendants.

126  345
f126 356
126  360
126  345
132  685
126  345
f140 681
f141 534

Certiorari: CONTEMPT: STATUTES. The statutes defining contempts and prescribing the procedure for their punishment, cover the whole of the subject-matter, and therefore operate to repeal the common law on the subject.

Contempt: PROCEDURE. Under the Code, a denial by the accused of the contempt charged does not. operate, as at common law, to purge him of the offense, but the court is to determine by a trial the facts put in issue by the answer; and a contrary view is not indicated by the provisions of Code, section 2407, relating to the violation of a liquor nuisance injunction.

Constitutional law: CONTEMPT: STATUTES. The provisions of the statute prescribing the procedure for the punishment of constructive contempts are not unconstitutional as depriving courts of their inherent power to punish contempt, but rather provide regulations for the exercise thereof; nor do they deprive the accused of any constitutional right or punish him without due process of law.

Trial: JURISDICTION. A contempt proceeding may be tried by any judge of the court in which the offense was committed.

Admission of evidence: PREJUDICE. Where there was other competent evidence to support a conviction for contempt, the admission. of a transcript of accused's testimony before an investigating committee of the bar, was not prejudicial error.

Contempt: EVIDENCE. In a proceeding to punish for contempt for attempting to influence the verdict of a juror, the evidence is reviewed and held sufficient to support a judgment of guilty.

THURSDAY, JANUARY 12, 1905.

CERTIORARI proceedings originally brought in this court to review the action of the district court of Polk county, Hon. Josiah Given, Judge, in respect of certain contempt proceedings had in that court, and wherein this plaintiff was

adjudged guilty of a contempt of court.  The opinion states
the case.— *Dismissed.*

*Parrish, Dowell & Parrish* and *Bowen & Brockett,* for
plaintiff.

*Wm. H. Baily, Thos. A. Cheshire,* and others, for de-
fendants.

BISHOP, J.— The return to the writ issued shows that
in October, 1903, an information was filed in the district
court of Polk county charging this plaintiff, Michael Drady,
with a contempt of court, for that, well knowing that one
M. V. Kennedy was a juror duly summoned, drawn, and
sworn as one of the jury in a civil cause wherein one Pflanz
was plaintiff and the Iowa Telephone Company was defend-
ant, then pending and on trial in the said court, did willfully
and knowingly attempt to improperly influence said juror to
render a verdict in said cause by conversing with said juror
about said cause, the merits thereof, and the verdict to be
rendered therein, and informing said juror as to the nature
and amount of the verdict in said cause expected by defend-
ant in said cause, and soliciting and requesting said juror
to render a verdict in said cause favorable to said telephone
company, and soliciting and requesting said juror to see one
Edward H. Hunter in respect to the verdict to be rendered in
said cause; contrary to the statute, etc.  Upon the filing of
such information, a rule issued, and in response thereto
Drady appeared, and made answer in writing, and under
oath, in which he denied all and singular the allegations of
fact contained in the information.  Thereafter the case came
on for hearing before Hon. Josiah Given, one of the judges
of said district court, whereupon a motion was made and
filed, asking that he (Drady) be discharged, for that, having
answered, denying without equivocation the facts alleged in
the information, he had purged himself of the charge of con-

tempt. This motion was overruled. Thereupon the attorneys for Drady objected to the case being heard before Judge Given for the reason that the case of Pflanz v. Telephone Company, out of which the alleged contempt grew, was pending and tried before Hon. A. H. McVey, one of the judges of said district court; that said action was one by ordinary proceedings, and that such matter of alleged contempt should be heard before Judge McVey, he still being one of the judges of said court. This motion was also overruled. Thereupon a trial was had resulting in a finding of guilt, and the entry of judgment for a fine and costs.

The contentions for error relied upon by plaintiff are four in number, and they may be stated as follows: (1) The court erred in overruling the motion for discharge and in proceeding to a trial of said cause upon its merits. (2) The court erred in denying the application of plaintiff to have said cause transferred to Judge McVey for hearing. (3) The court erred in the admission of certain evidence, particular reference to which will be made in the further course of this opinion. (4) The competent evidence was not sufficient to authorize the judgment. These several matters may be taken up and disposed of in the order of their statement.

I. The information filed in the district court was bottomed upon subdivision 4 of section 4461 of the Code, which provides that any court may punish, as for a contempt, bribing or attempting to bribe, or in any other manner improperly influencing or attempting to influence, a juror to render a verdict. The charge made in the information is of a criminal constructive contempt; that is, a contempt criminal because directed against the dignity and authority of the court, and constructive because involving an alleged act or conduct not occurring in the immediate presence or within the hearing of the court. It is agreed between counsel representing the respective parties that, whatever may have been the rule respecting civil or equi-

1. CONTEMPT: statutes.

table contempts, at common law a person charged with a criminal constructive contempt might, upon being brought in, purge himself by making answer under oath denying in unequivocal terms the commission of the act charged as constituting the contempt. Having done this, it was error for the court to refuse to dismiss him upon his motion therefor; in other words, his denial under oath could not be traversed. If false in fact, the government was remitted to a prosecution for perjury. It is the contention of counsel for the defendants, however, that the common-law rule in the respect under consideration has been abolished in this State, and that the whole matter as related to the procedure and judgment in cases of contempt is now regulated by statute. Upon the proposition thus advanced counsel for plaintiff take issue, and it is the argument that not only has the legislature not undertaken to abolish the rule as it obtained at common law, but that it has no constitutional power to do so.

The doctrine that courts possess the inherent power to take cognizance of and punish contempts is as old, relatively speaking, as the establishment of the courts themselves. Formerly it was left wholly with the courts to determine what acts or omissions should be held to constitute contempts, to prescribe the method of procedure in such cases, and to determine upon the punishment to be inflicted. Having this in mind, we may proceed to inquire into the scope and effect of the statutory provisions on the subject. With the adoption of the Code of 1851 the legislature of this State saw fit to take up the subject in general, and by chapter 94 not only defined what acts or omisisons were to be deemed contempts, but prescribed a course of procedure to be followed in contempt cases, and the character and extent of the punishment that might be inflicted. In all material respects the course of procedure then prescribed has remained unchanged to the present time. Code 1897, chapter 17, title 21. As related to constructive contempts — and no attempt is made to distinguish between civil and criminal contempts

— the statute, in substance, provides for the filing of an affidavit or information, and the issuance of a rule or warrant to secure the attendance of the alleged contemnor. Upon being brought in, the accused may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved. If upon the hearing the court act upon evidence given by others, such evidence must be in writing, and be filed and preserved; if upon its own knowledge in the premises, a statement of the facts must be entered on the records, or be filed and preserved where the court keeps no record. If the accused be adjudged guilty, and is committed, the warrant must state the particular facts and circumstances on which the court acted, and whether the same was within the knowledge of the court or was proved by witnesses. It will thus be observed that the lawmaking power undertook to cover the whole field as related to the subject, and it is general doctrine that a statute which treats of the whole of any subject-matter is a constructive repeal of the common law on that subject. 26 Am. & Eng. Ency. 665. In view of this, and conceding the legislative power, it follows that the courts must be governed in all cases by the provisions of the statute, and they may not resort to the common law either to find subjects of contempt or to justify a course of procedure other than as by the statute prescribed. The precise point may not have been raised before, but, as we think, all our previous holdings having relation to the subject are in harmony with the conclusion thus reached. This much, at least, is to be said: that all the cases recognize the statute as authoritative upon the subject. *First Cong. Church v. Muscatine*, 2 Iowa, 69; *Dunham v. State*, 6 Iowa, 245; *State v. Anderson*, 40 Iowa, 207; *State v. Myers*, 44 Iowa, 580; *Russell v. French*, 67 Iowa, 102; *Dorgan v. Granger*, 76. Iowa, 156.

Proceeding to a construction of the statute, it seems clear enough that an innovation on the procedure at common law was intended. The statute does not say that the written

explanation filed by the accused, if in effect a denial, shall
operate to preclude any further inquiry on the
**2. CONTEMPT:** part of the court. Nor does it say that the
procedure. method of procedure provided shall have appli-
cation to one class of contempts, but not to another. If such
had been intended, it would have been easy enough to have
said so. Moreover, the mandatory provision that the evidence
must be taken in writing and preserved is general and it ad-
mits of no exceptions. Such provision of itself, as we think,
contemplates a trial, and there could be no trial save upon a
denial of guilt. A construction of the statute conformably to
the contention of plaintiff would lead to our saying that in
the case of criminal contempts the requirement goes no
farther than to make necessary the taking and preserving of
the evidence in those cases only where the accused either
stands dumb or fails to move for his discharge. Having
legislated upon the subject generally, and there being no
provision that a person accused may try himself, we think it
was intended that the court should in all cases proceed to de-
termine the essential facts of the charge put in issue by the
answer.

We cannot agree with counsel for plaintiff that a con-
trary view is indicated by the provisions of the act of the
Twenty-First General Assembly, now section 2407 of the
Code. That statute has direct relation to the violation of an
injunction issued to restrain the maintenance of an intoxi-
cating liquor nuisance. It provides for the filing of an in-
formation, and in direct terms for a trial, and this upon
affidavits, or, when demanded by either party, upon the pro-
duction and oral examination of witnesses. The statute is
additional to the general chapter on the subject of contempts,
and, in our view, is in perfect harmony therewith.

We may now take note of the contention of counsel for
plaintiff to the effect that the statute — and giving to it force
of operation as above indicated — must be held void as in
excess of the power of the legislature. The argument is put

upon two grounds: First, that it is an attempt to interfere

3. CONSTITU-        with the inherent power of the courts to judge
TIONAL LAW:      of and punish contempts; second, the legisla-
contempt;
statutes.        ture cannot confer power upon the courts to try
one accused of a criminal constructive contempt who has
purged himself by answer, as such would amount to a denial
of due process of law and of the right to trial by jury, as
guarantied under the Constitution. While ready to express
our appreciation of the great industry and care which mark
the brief and argument of counsel, we cannot admit of sound-
ness in the conclusion therein reached. Now, the district
court is a constitutional court, and primarily it derives its
authority to act from the provisions of the fundamental law
of the State. That such courts have from time immemorial
possessed the inherent power to punish for contempts is con-
ceded. But while jurisdiction in all matters civil and crimi-
nal is conferred upon the court, the framers of the Constitu-
tion provided that such jurisdiction should be exercised in
the manner prescribed by the co-ordinate law-making branch
of the government. This is what was attempted by the stat-
ute in question. There is no ground upon which to plant the
assertion that here was an attempt on the part of the legisla-
ture to deprive the courts of their inherent power; on the
contrary, the aim was to provide regulations for the exer-
cise thereof. This, according to the better weight of authori-
ty, it might do, and, as we think, to a certain extent it must
do. This conclusion finds support in the following cases:
*Arnold v. Com.,* 80 Ky. 135; *State v. Morrill,* 16 Ark. 384;
*Middlebrook v. State,* 43 Conn. 257 (21 Am. Rep. 650);
*People v. Wilson,* 64 Ill. 195 (16 Am. Rep. 528); *Cheadle v.
State,* 110 Ind. 301 (11 N. E. Rep. 426, 59 Am. Rep. 199);
*Holman v. State,* 105 Ind. 513 (5 N. E. Rep. 556). Our
own cases give recognition tacitly to the doctrine thus stated.
*Dunham v. State,* 6 Iowa, 257; *State v. Folsom,* 34 Iowa,
583; *Lutz v. Aylesworth,* 66 Iowa, 629; *Jordan v. Circuit
Court,* 69 Iowa, 177; *Field v. Thornell,* 106 Iowa, 7.

It has been said by many very respectable courts that, inasmuch as the power to punish for contempts comes into existence inherently with the establishment of the court itself, and not by virtue of any provision of statute, it is not within the province of the legislature either to take away the power, or, under the guise of regulation, to render it ineffective. And we are not prepared to say that this is not so. As was said in *Dunham v. State, supra,* in speaking of the statute: "We can conceive of no possible state of case in which the exercise of this power might become necessary for the protection of the court or the due administration of the law that is not covered by these provisions. If such a case should by possibility arise, we would not say that by virtue of its inherent power the punishment might not be inflicted." It is sufficient to say in the instant case that the argument of counsel is not in the nature of a criticism in this respect upon the present statute, and we may add that for more than fifty years the courts of this State have found the provisions thereof to be generally effective in the rare cases in which assaults upon their dignity and authority have been made.

The further contention of plaintiff that the statute is violative of his constitutional rights cannot be sustained. It must be remembered that the proceeding is not one to punish the offense alleged as an offense against an established law of the State. For the offense against the State an offender may be indicted, tried, and, upon conviction, punished, irrespective of any proceedings had for contempt. And manifestly due process of law would require that upon such trial a jury should be impaneled. Contempt has relation solely to an offense against the court itself, its dignity and authority. And whether or not such an offense has been committed has always been held to be determinable solely by the court affected thereby. Due process of law means according to the established forms of law. And the processes of the law are always subject to change as exigencies may require, and of this no one may complain as long as no constitutional right is

violated.   Now, at common law an alleged contemnor had no
inherent right to a discharge upon filing an unequivocal de-
nial of the charge made.   At best an order for his discharge
was pursuant simply to a method of procedure adopted by
the courts in such cases.   The effect thereof was to regard the
offense against the court as satisfied by the denial, and leaving
the accused to a prosecution for perjury if he swore falsely,
and also to a prosecution for the offense when vulnerable
thereto under the law of the State relating to crimes.   The
statute goes no farther than to change the method of proce-
dure.   It determines what shall now be regarded as due proc-
ess of law, and it takes away no inherent right possessed by a
person accused.   Nor does it confer any rights not enumer-
ated.   The right to a trial by jury never existed in such
cases, and the statute neither in terms nor by inference con-
fers such right.   The reason therefor is obvious, and we need
not pursue the subject further.   *Ex parte Grace,* 12 Iowa,
208; *Manderscheid v. District Court,* 69 Iowa, 240; *Mc-
Donnell v. Henderson,* 74 Iowa, 619, 9 Cyc. 47, and cases
cited.

II.   We think there was no error in the refusal by the
court, as presided over by Judge Given, to transfer the case
for trial before Judge McVey.   By statute, the Ninth Dis-
trict consists of Polk county, and the district
has four judges.   There is, then, one court with
four judges, each one of whom may transact
any business within the jurisdiction of the court.   The
offense charged was against the court, and might, therefore,
be heard by any judge who was in fact presiding over such
court.   It is immaterial that the particular case on which
the juror was serving was upon trial before Judge McVey,
and this is particularly true as the offense was not in any
sense personal to him.

III.   As we think, no substantial prejudice resulted
from the admission of a transcript of the evidence given by
this plaintiff, Drady, on an examination before the bar com-

mittee of Polk county. In any event, there was sufficient competent evidence to warrant the judgment, and we need not farther consider the error assigned based upon the ruling of the court under which such transcript was received in evidence.

5. ADMISSION OF EVIDENCE: prejudice.

IV. The evidence shows that Drady and Kennedy were old-time and intimate friends, and that the latter was a juror on the telephone company case; that while said case was on trial, and during an intermission of court, Drady approached Kennedy, and knowing that he was so acting as a juror, talked with him about the verdict to be rendered in the case, saying that, while the company expected an adverse verdict, it wanted the same cut down, and that E. H. Hunter had expressed a desire to see him. It appears that Mr. Hunter had formerly been connected with and in the service of the telephone company, and that he was at the time in question, and in a certain respect, connected in business with the attorney who represented the telephone company, and that his offices connected with or were adjacent to the offices of said attorney. The record does not make it appear, however, that the conduct of Drady was authorized by Hunter, or that he or the attorney for the telephone company had knowledge respecting such conduct prior to or at the time of the occurrence thereof. To the credit of Kennedy it is to be said that he became angry at being thus approached, and not only refused to go and see what Hunter wanted, but declined to discuss the matter of the verdict that should be rendered in said case.

6. CONTEMPT: evidence.

From the foregoing statement of facts, it must be apparent that within the meaning of the statute there was an attempt on the part of Drady to improperly influence a juror to render a verdict. Therefrom it follows that the judgment of the district court was right and it should be upheld. Accordingly it is ordered that the present proceedings be, and the same are, *dismissed*.